UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>NIKKO D'AMBROSIO | No. 23 CR 323<br><br>Hon. Elaine Bucklo |

**GOVERNMENT'S CONSOLIDATED MOTIONS *IN LIMINE***

The UNITED STATES OF AMERICA, through its attorney MORRIS PASQUAL, Acting United States Attorney for the Northern District of Illinois, respectfully submits the following motions *in limine*: (1) a motion to preclude the introduction of defendant Nikko D'Ambrosio's amended tax returns during his defense case; (2) a motion to preclude defendant's introduction of certain emails and text messages; and (3) a motion to preclude the proposed testimony of retired IRS Special Agent Ron Braver regarding certain U.S. Treasury Department regulations applicable to tax preparers.[1]

**Factual Background**

Overview

The two-count indictment charges defendant Nikko D'Ambrosio with filing false federal income tax returns for the years 2019 and 2020, both violations of 26 U.S.C. § 7206(1). Dkt. 1. In those tax returns, defendant, a salesman for an Illinois-

---

[1] The consolidated motions *in limine* constitute an omnibus filing and no single motion exceeds 15 pages. Thus, the government understands that this submission conforms with Local Rule 7.1.

based electronic sweepstakes kiosk[2] operator, MAC-T, LLC ("MAC-T") claimed to have incurred certain business expenses arising from qualifying business meals and business-related car travel and claimed deductions arising from charitable contributions. *Id.*

Relevant Tax Provisions

Pursuant to IRS rules and regulations, during the years 2019 and 2020, taxpayers could reduce their taxable income by taking deductions based on certain business expenses and charitable contributions. For example, a taxpayer was permitted to deduct from his or her income up to 50% of the cost of qualifying business meals. *See* 26 U.S.C. § 274(n)(1). A taxpayer was also permitted to deduct from his or her income the cost of operating an automobile for business purposes by claiming the actual allowable expense amounts or by using the business standard mileage rate of "58 cents per mile for all miles of business use" in 2019, and "57.5 cents per mile for all miles of business use" in 2020. *See* IRS Notice 2019-02, *2019 Standard Mileage Rates*; IRS Notice 2020-02, *2020 Standard Mileage Rates*. A taxpayer could also deduct charitable contributions to "churches and conventions or associations of churches" to 50% of adjusted gross income. *See e.g.*, IRS Pub. 526, *2019 Charitable Contributions*.

---

[2] Sweepstakes kiosks are electronic gaming devices unregulated by Illinois law. According to IRS Form 1099s, which the government will introduce into evidence at trial, in 2019 and 2020 defendant was a contract salesman for sweepstakes operator MAC-T.

Preparation and Filing of Defendant's Individual Income Tax Returns for
Tax Years 2019 and 2020

By way of email, defendant provided tax return information, including the above meal expenses, business mileage, and charitable contribution amounts, to his tax preparer, Sheila January-Fort. In those emails, defendant attached supporting documentation and represented that he had "logs supporting [his] expenses (miles, meals, donations, etc.)." In an attached worksheet, defendant represented the starting and ending odometer readings for his vehicles, and that he kept a detailed log reflecting his weekly contributions to St. John Cantius Church in Chicago. January-Fort took the information that defendant provided her, and prepared defendant's individual income tax returns. January-Fort sent those returns to defendant by email with a cover letter that informed: "Enclosed you will find copies of your Federal and/or state income tax returns we have prepared from information you provided to us . . . We ask that you review the enclosed copies of your tax return(s) and if any questions arise, feel free to give us a call."

For each tax year, defendant completed an IRS Form 8879 (IRS e-file Signature Authorization), and January-Fort filed the tax returns at defendant's direction. In signing the Form 8879s, defendant signed under penalty of perjury that he had examined his individual income tax return and accompanying schedules and statements, and, to the best of his knowledge, they were true, correct, and complete.

Defendant's 2019 Individual Income Tax Return

For the 2019 tax year, defendant reported $213,185 in gross income, which was reduced by, among other items, the following claimed business expenses and tax deductions:

- A $32,094 deduction based on a claimed $64,189 spent on eligible business meal expenses;
- A $122,169 deduction based on claimed business car and truck expenses arising from 210,637 business miles driven; and
- A $26,751 deduction based on $29,775 in claimed 2019 charitable contributions to St. John Cantius Church. This amount of charitable contributions permitted defendant to claim a tax deduction of $26,751. The limitation to the amount that could be claimed was notated in Box 14 of defendant's Schedule A, with the note "CONTRIBUTIONS LIMITED DUE TO AGI [adjusted gross income]."

These claimed deductions combined to permit defendant to reduce his 2019 taxable income by approximately $181,014. After claiming the above deductions, along with others, defendant reported a 2019 net taxable income of $4,443—approximately $208,742 less than his reported gross income.

Defendant's 2020 Individual Income Tax Return

For the 2020 tax year, defendant claimed $334,210 in gross income and claimed similar expenses and deductions, though in greater amounts. These include:

- A $99,806 deduction based on a claimed $199,612 spent on eligible business meal expenses;

- A $152,170 car and truck expense deduction based on a claimed 264,673 business miles driven; and

- A $37,749 deduction based on $34,725 in claimed 2020 charitable contributions to St. John Cantius Church, plus $3,024 in carryover contributions from the previous year.

These claimed expenses and deductions combined to permit defendant to reduce his 2020 taxable income by approximately $289,725. After claiming the above expenses and deductions, along with others, defendant reported a 2019 net taxable income of $14,874—approximately $319,336 less than his reported gross income.

### IRS-CI Interview and the 2022 Amended Tax Returns

On January 28, 2022, defendant was interviewed by special agents from IRS Criminal Investigation (IRS-CI). During the interview, the IRS-CI agents asked defendant about his 2019 and 2020 tax returns and the above-described business expenses and deductions, and defendant claimed that they were correct. Defendant further informed that, in his role with MAC-T, he helped place the electronic sweepstakes kiosks into businesses, received a commission of future revenue from those kiosks, and that his income was "passive income," that is, after the kiosks were placed in certain businesses, defendant received income related to the kiosks without having to perform any further work at the businesses.

After the interview, on May 11, 2022, defendant filed two Form 1040-X amended individual income tax returns for the years 2019 and 2020 (the "Amended Tax Returns"). In his Amended Tax Returns, defendant claimed significantly reduced business expenses, deductions, and charitable contributions. Not coincidentally, the amended portions of the returns were the same business expenses and charitable contributions defendant was questioned about when interviewed by the IRS-CI agents roughly two months earlier (and the same deductions at issue in this case). In his Amended 2019 Tax Return, defendant claimed the following revised deductions:

- A $23,100 deduction based on a claimed $46,200 spent on eligible business meals. This revision represents a $17,989 reduction in claimed business expenses from defendant's original 2019 tax return, resulting in an $8,994 increase in taxable income.

- A $40,566 deduction based on claimed business car and truck expenses arising from 69,941 business miles driven. This revision represents a 140,696-mile reduction in claimed business mileage driven, and an $81,603 increase in taxable income.

- A $2,600 deduction based on claimed charitable contributions of "[$]50/week." This revision represents a $27,175 reduction in claimed charitable giving for the year 2019.

In total, the above revisions combined to decrease defendant's claimed 2019 tax deductions for those particular deduction categories by approximately $144,847.[3]

---

[3] Defendant's Amended Tax Returns also contain other tax deductions not relevant to this criminal case that are therefore not discussed in this motion.

6

Defendant's Amended 2020 Tax Return contains similar revisions, which included:

- A $21,562 deduction based on a claimed $43,124 spent on eligible business meals. This revision represents a $156,488 reduction in claimed business expenses from defendant's original 2020 tax return, resulting in an $78,244 increase in taxable income.

- A $41,504 deduction based on claimed business car and truck expenses arising from 72,180 business miles driven. This revision represents a 192,493-mile reduction in claimed business mileage driven from defendant's original 2020 tax return, and a $110,666 increase in taxable income.

- A $5,200 deduction based on claimed charitable contributions of "[$]100/week." This revision represents a $29,525 reduction in claimed charitable giving for the year 2020.

In total, the above revisions combined to decrease defendant's claimed 2020 tax deductions for those particular deduction categories by approximately $218,435. To date, defendant has not paid the federal taxes due and owing arising from the filing of his Amended Tax Returns for the tax years 2019 or 2020.

## Summary of Expected Trial Evidence

At trial, the government intends to introduce testimony from various witnesses, including, among others, the IRS-CI case agent, defendant's tax preparer, defendant's sweepstakes business partners, an employee from the Office of the

Illinois Secretary of State ("IL-SOS") who will establish that defendant did not own the vehicles on which he claimed business expense deductions, and an employee of St. John Cantius Church who will testify that the church has no record of defendant's claimed donations. The government also intends to introduce vehicle service records and IL-SOS vehicle registration records documenting the vehicles' mileage, as well as videos showing defendant taking his mother's Lexus—one of the vehicles claimed on his tax returns—to an Illinois Vehicle Emissions Testing location. The government will also present financial records which show that defendant did not, in fact, spend hundreds of thousands of dollars on business meals, and an IRS Revenue Agent summary witness, who will explain the significance of the tax issues at hand, their importance to the IRS in calculating tax due and owing, and provide a calculation of defendant's tax deficiency based on the original returns.

## **Legal Standard**

A trial court has broad discretion to determine the admissibility of evidence, subject to the Federal Rules of Evidence. *United States v. Carson*, 870 F.3d 584, 593 (7th Cir. 2017). Federal Rule of Evidence 402 provides generally that, "[r]elevant evidence is admissible," and that "[i]rrelevant evidence is not admissible." "Evidence is relevant if it (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. However, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the

following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

## Argument

**I.    The Court Should Preclude Defendant from Introducing Evidence of or Argument About the Filing of the 2022 Amended Tax Returns.**

The Court should preclude defendant from introducing evidence of or argument about the Amended Tax Returns. The only possible reason defendant would seek to admit the Amended Tax Returns would be to present a "no harm no foul" argument—i.e., an argument for nullification. Even if defendant could articulate a relevant purpose for his admission of the Amended Tax Returns, they would constitute hearsay without an exception (if introduced by defendant). The only conceivable way in which the Amended Tax Returns may be introduced into evidence is if they are offered by the government to prove the falsity of defendant's original 2019 and 2020 tax returns.

As discussed above, on May 11, 2022, roughly four months after he was interviewed by IRS-CI agents, defendant caused to be filed amended 2019 and 2020 individual income tax returns. The Amended Tax Returns reflected substantially lower claimed business expenses and charitable deductions, and therefore substantially higher tax liabilities (which, to date, defendant has not paid). In particular, the Amended Tax Returns reflected significantly lower mileage estimates for defendant's claimed business vehicle expenses, lower claimed business meal expenses, and lower charitable contributions, which result in over $400,000 in combined tax liabilities. In essence, the Amended Tax Returns prove the falsity of

9

the deductions and expenses claimed in defendant's original 2019 and 2020 tax returns.

First, defendant's amended returns are irrelevant to any potential defense that he did not willfully file false tax returns. The jury will need to determine whether defendant willfully caused the filing of false tax returns when he caused his tax prepare to file his original returns—i.e., whether he "knew that he had a legal duty to file a truthful tax return, but when he signed the return, he did not believe that it was truthful." Seventh Circuit Pattern Jury Instructions, 26 U.S.C. § 7206(1) Fraud and False Statements—Elements, at 1072 (2023). Defendant's Amended Tax Returns—which were filed approximately a year after he caused his tax preparer to file his false 2020 return and approximately two years after he caused his tax preparer to file his false 2019 return—have no bearing on defendant's state of mind at the time the original tax returns were filed. Courts have found that the timeliness of amendment, or lack thereof, is critical to determining the relevance of amended tax returns. *See United States v. Beavers*, 756 F.3d 1044, 1050 (7th Cir. 2014) (affirming the exclusion of amended tax returns at trial where they were filed many months after the original tax returns); *see also United States v. Stoehr*, 196 F.2d 276, 282–83 (3d Cir. 1952) (observing that "[i]f the defendant here had promptly filed an amended return and made payment of the additional sum owed, we think such evidence might very well have been admissible"). Not only was the filing of the Amended Tax Returns untimely, but it occurred here "after the taxpayer [knew] he [was] under investigation." *Beavers*, 756 F.3d at 1044; *see also United States v.*

*McClain,* 934 F.2d 822, 834–35 (7th Cir. 1991) (finding "no reason" to disturb the district court's ruling that defendant's 1985 tax return was not probative of his state of mind at the time he filed his 1984 return, given his indictment in the intervening year); *United States v. Radtke,* 415 F.3d 826, 840–41 (8th Cir. 2005) (affirming the exclusion of amended tax returns at trial, because "there is no doubt that self-serving exculpatory acts performed substantially after a defendant's wrongdoing is discovered are of minimal probative value as to his state of mind at the time of the alleged crime"). Because the Amended Tax Returns are not at all probative of defendant's statement of mind with respect to the filing of the original returns, the Court should preclude defendant from introducing them at trial. *See, e.g., Beavers*, 756 F.3d at 1050 (affirming the exclusion of amended tax returns and payments in a § 7206(1) prosecution where "the district court conditioned the admission of evidence of Beaver's corrective actions upon a showing that these actions had a connection to Beaver's state of mind at the time he filed his incorrect returns").

Second, defendant's filing of the Amended Tax Returns does not undermine the falsity of his claimed his business expenses and deductions in the original returns—in fact, they do the exact opposite. As noted above, the only substantive differences between defendant's original 2019 and 2020 tax returns and the Amended Tax Returns are the business expenses and charitable deductions at issue in this case—the same deductions the IRS-CI agents asked defendant about in January 2022. The Amended Tax Returns constitute an admission by defendant that his claimed deductions in 2019 and 2020 were false. Because they support no legitimate

11

argument, the only logical reason defendant would attempt to introduce the Amended Tax Returns would be to argue to the jury that he later took corrective action. In other words, defendant would be arguing "no harm, no foul," which is, in effect, an argument for nullification. Of course, the law is plain that it is improper for a defendant to suggest in any way that the jury should acquit the defendant even if it finds that the government has met its burden of proof. *See, e.g.*, *United States v. Bruce*, 109 F.3d 323, 327 (7th Cir. 1997) ("Jury nullification 'is not to be positively sanctioned by instructions,' but is to be viewed as an 'aberration under our system.'") (citation omitted); *United States v. Laguna*, 693 F.3d 727, 730–31 (7th Cir. 2012) (district court properly excluded evidence because, among other reasons, it had the potential to invite nullification).

Third, defendant's introduction of the Amended Tax Returns presents a significant risk of unfairly confusing and prejudicing the jury. In similar circumstances, courts have excluded such evidence under Rule 403. *See, e.g., United States v. Evdokimow*, 726 F. App'x 889, 895 (3d Cir. 2018) (affirming the exclusion of amended tax return filing and payment of back taxes where the district court "found that the delay in filing amended returns reduced the probative value of that evidence to demonstrate [the defendant's] earlier mental state, and described its concern that evidence of tax payments made years after the period charged in the Indictment would confuse the jury and raise the prospect of nullification"). The Court should avoid such an outcome by precluding defendant from offering the Amended Tax Returns into evidence at trial under Rule 403.

Additionally, even if defendant could articulate a relevant and permissible use of the Amended Tax Returns, the returns would constitute inadmissible hearsay if introduced by defendant. *See* Fed. R. Evid. 802. The Amended Tax Returns would only be arguably relevant if admitted for the truth of the matter asserted and constitute out of court statements made by defendant (the party offering the statements). The Amended Tax Returns are thus only potentially admissible by defendant, if deemed relevant, in the narrow instance where defendant takes the stand in his defense and admits that he made the statements contained therein. *See* Fed. R. Evid. 801(d) advisory committee's note regarding the 1972 Proposed Rules ("If the witness admits on the stand that he made the statement and that it was true, he adopts the statement and there is no hearsay problem."); *see also, e.g., United States v. VanderZwaag*, No. 08 CR 324, 2009 WL 2584753, at *6 (W.D. Mich. Aug. 19, 2009) ("If the defendants seek to introduce the amended tax returns at any time other than during the testimony of one of the defendants, said returns shall be **EXCLUDED** as inadmissible hearsay.").

To the extent the Amended Tax Returns are at all relevant and admissible in this case, it is to the element of falsity, and then only when introduced by the government to demonstrate that defendant's original returns were indeed false when defendant caused them to be filed. For this reason, the Amended Tax Returns may be properly introduced into evidence at trial if the government offers them as evidence of (1) the falsity of defendant's statements in his original 2019 and 2020 tax returns, and (2) defendant's knowledge of that falsity. *See, e.g., United States v.*

13

*Burdett*, No. 20 CR 139, 2022 WL 16923732, at *12 (E.D. La. Nov. 14, 2022) ("[T]he fact that [defendant] asked [her tax preparer] to amend her 2012 tax returns . . . supports an inference that she knew there was some falsity in her tax returns."). Moreover, if the amended returns are offered by the government *against* defendant, they are definitionally not hearsay pursuant to Federal Rule of Evidence 801(d)(2)(A), because they are statements by a party opponent.

Accordingly, the government requests that the Court preclude defendant from introducing evidence of or argument about the Amended Tax Returns, but permit the government to admit the Amended Tax Returns.

## II. The Court Should Preclude Defendant from Introducing Certain Emails and Text Messages.

In 2019, 2020, and 2021, defendant exchanged emails and text messages with his cousin, a certified public accountant who works for the IRS ("Defendant's Cousin"). In those communications, defendant provided Defendant's Cousin with worksheet attachments that Defendant's Cousin emailed to defendant's tax preparer. All of the underlying information in the worksheets – i.e., the false business meal expense, mileage, and charitable contribution information – came from defendant, and Defendant's Cousin served as a liaison between defendant and the tax preparer, whom Defendant's Cousin had a familial relationship with and had recommended. The communications reflect defendant discussing the supporting information for the tax returns with Defendant's Cousin. Based on a preliminary exhibit list provided by

14

defense counsel, the government understands that defendant seeks to admit several of these emails into evidence.[4]

The Court should preclude defendant from introducing these emails and text messages into evidence. First, the emails and text messages have limited probative value and present a significant risk of confusing the jury. Fed. R. Evid. 403. Presumably, defendant intends to attribute blame to Defendant's Cousin for any errors in the information contained in the worksheets and incorporated into defendant's 2019 and 2020 tax returns. But as discussed above, and as Defendant's Cousin would testify, the information contained in the worksheets came directly from defendant. Defendant's Cousin was not retained to audit defendant's records, did not prepare the underlying tax returns, and did not cause the tax preparer, Sheila January-Fort, to file the returns at defendant's direction—nor did Defendant's Cousin sign the IRS Form 8879s under penalty of perjury (as defendant did here). The introduction of emails and text messages between defendant and Defendant's Cousin where the worksheets were sent and then relayed to defendant's tax preparer risk confusing the jury about who was ultimately responsible for the provision of the false information and signing off on the false returns. Accordingly, the limited probative value of the emails is substantially outweighed by the risk of confusing the jury under Federal Rule of Evidence 403.

Second, the emails and text messages constitute hearsay, and no exception applies to permit their admission into evidence by defendant. Fed. R. Evid. 801, 802.

---

[4] The government obtained the text messages between defendant and Defendant's Cousin on December 21, 2023, and produced them soon after.

The emails and text messages reflect exchanges between defendant and Defendant's Cousin. The only reason defendant would seek to admit the emails is to establish the truth of the matters asserted in the communications in support of a later argument that Defendant's Cousin was (somehow) responsible for the false information in defendant's original 2019 and 2020 tax returns. Defendant's Cousin will testify that he was not responsible for the false information and the law imputes a responsibility upon defendant to ensure that his returns were accurate. Nevertheless, the Court should preclude defendant from admitting out-of-court statements for the truth of the matter asserted in service of his faulty argument.

### III. The Court Should Preclude Testimony from Retired IRS-CI Agent Regarding Certain Department of Treasury Regulations Meant for Tax Preparers.

Defendant has informed the government that he may call former IRS-CI Special Agent Ron Braver regarding certain U.S. Department of the Treasury regulations applicable to tax professionals. The proffered justification for Braver's testimony is that tax preparers have certain obligations to exercise diligence as to the accuracy of returns that they prepare. *See* Treasury Department Circular 230, 31 C.F.R. §§ 10.21, 10.22 (*available at* https://www.irs.gov/pub/irs-pdf/pcir230.pdf). However, defendant's intended use of IRS Circular 230 is nothing more than an exercise in blame-shifting and is irrelevant to the issue of defendant's guilt or innocence at this trial.

At trial, the government must prove that defendant willfully made false statements to the IRS as part of the filing of his 2019 and 2020 tax returns. *See*

16

Seventh Circuit Pattern Jury Instructions, 26 U.S.C. § 7206(1) Fraud and False Statements—Elements, at 1072 (2023). Whether or not defendant's tax preparer exercised sufficient diligence per IRS regulations to catch defendant in his lies is irrelevant to the element of defendant's intent, and as such it is difficult to see the probative value of Braver's testimony.

As noted above, defendant used a professional tax preparer, Sheila January-Fort, to prepare his 2019 and 2020 tax returns. In both instances, defendant emailed January-Fort, listed his claimed itemized business meal expenses, business miles driven, and the charitable tax deductions that he planned to take on his tax returns. In doing so, defendant provided detailed mileage figures for each of three specific vehicles, and specific amounts for his charitable contributions, which he claimed were supported by a weekly log of donations. Defendant further represented to January-Fort that he maintained a "detailed log" supporting the expenses and deductions. Using that information and relying upon defendant's representations, January-Fort prepared defendant's Form 1040s using the information regarding expenses and charitable contributions provided by defendant. January-Fort then emailed the draft returns to defendant for his review. Defendant then signed IRS Form 8879s, acknowledging under penalty of perjury that he had reviewed the returns and that they were accurate, and January-Fort electronically filed them with the IRS on defendant's behalf.

The Court should preclude Braver's testimony, and the regulations discussed above, because they have no relevance to any elements of the offense charged and will

17

only serve to unfairly confuse and prejudice the jury. Fed. R. Evid. 402, 403. The implication, if not the explicit claim, of Braver's testimony regarding the Treasury regulations is that defendant's tax preparer, January-Fort, should have discovered the falsity of defendant's information and not prepared or filed the underlying returns. However, January-Fort was not an auditor, she was a tax preparer relying upon information provided by defendant to prepare his returns. January-Fort informed defendant as such, prepared the returns using defendant's information relying on its accuracy, and then sent the draft returns to defendant for his review. Through the signed Form 8879s, defendant represented that he had reviewed the draft returns, and that they were accurate. That is, whether or not January-Fort complied with IRS regulations for tax preparers is irrelevant to the charges that defendant willfully caused another to file false tax returns with the IRS.

The regulations are also irrelevant and prejudicial because they did not apply in defendant's dealings with his tax preparer. Defendant cannot claim to have relied on the above regulations, or on the advice of January-Fort, because he did not provide her with correct information in the first place. *See, e.g., United States v. Libous*, 645 F. App'x 78, 82 (2d Cir. 2016). "Reliance on [the] advice [of an accountant], offered as a defense" to tax fraud, requires that a defendant "fully and honestly lay[ ] all the facts before" the accountant. *United States v. Evangelista,* 122 F.3d 112, 117 (2d Cir. 1997) (internal quotation marks omitted); *accord United States v. Blanchard*, 618 F.3d 562, 576 (6th Cir. 2010) ("[A]lthough [the defendant] argues that the jury could not reasonably have found that he knowingly claimed false claims because he relied

18

on ... [the] professional advice [of] his accountant, this argument is undermined by the testimony indicating that [the defendant] misled and withheld pertinent information from [his accountant]."). Because defendant provided January-Fort with false information when she was preparing his tax returns, she could not have known of defendant's non-compliance with the tax laws. Accordingly, the above regulations did not apply, and the Court should preclude defendant from presenting them at trial.

In addition, even if the Court determined that such evidence was relevant, and it is not, the Court should preclude it under Rule 403. Evidence of IRS regulations applying to tax preparers and argument that January-Fort was responsible for the false information defendant provided would confuse the jury about the ultimate inquiry. In particular, that is the case here where there is no dispute that the original tax returns (and the information defendant provided to January-Fort) was false. As discussed above, defendant ultimately caused January-Fort to file amended returns after the IRS interviewed him in January 2022 and he learned that the IRS was looking at his false tax returns for 2019 and 2020. Because the information defendant provided to January-Fort in connection with the 2019 and 2020 tax returns was indisputably false, the only issue the jury will have to decide is whether defendant's false statements were willfully made. January-Fort's failure to identify defendant's lies does not, in any way, speak to defendant's willfulness, and testimony regarding IRS regulations for tax preparers will only mislead and confuse the jury.

## **Conclusion**

For the reasons set forth above, the government requests that the Court preclude (1) the introduction of the Amended Tax Returns into evidence by defendant; (2) the introduction of emails and text messages between defendant and his cousin; and (3) the testimony of retired IRS Special Agent Ron Braver regarding certain U.S. Treasury Department regulations.

Date: December 29, 2023                              Respectfully submitted,

                                                       MORRIS PASQUAL
                                                       Acting United States Attorney

By:    */s/ Brandon D. Stone*
        Brandon D. Stone
        Richard M. Rothblatt
        Assistant United States Attorneys
        219 South Dearborn Street, 5th Floor
        Chicago, Illinois 60604
        (312) 353-5300