UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA

v.

NIKKO D'AMBROSIO

No. 23 CR 323

Hon. Elaine E. Bucklo

## GOVERNMENT'S MOTION TO PRECLUDE
## THE TRIAL TESTIMONY OF DR. STEVEN FARMILANT

The UNITED STATES OF AMERICA, through its attorney MORRIS PASQUAL, Acting United States Attorney for the Northern District of Illinois, respectfully submits this motion to exclude the testimony of defendant Nikko D'Ambrosio's proffered expert witness, Dr. Steven Farmilant, under Federal Rules of Evidence 702, 403, and 704(b), and Federal Rule of Criminal Procedure 12.2(b). To the extent the Court deems it necessary to evaluate Dr. Farmilant's testimony, the government moves for a *Daubert* hearing. Finally, to the extent that the Court allows defendant to introduce any aspect of Dr. Farmilant's testimony, the Court should preclude Dr. Farmilant from introducing inadmissible hearsay, under Federal Rule of Evidence 801.

## I. BACKGROUND

### A. Factual Background

As discussed in the Government's Consolidated Motions *in Limine*, (Dkt. 42), the charges in this case stem from defendant's filing of false federal income tax returns for the years 2019 and 2020. *See also* Dkt. 1 (Indictment). In sum, the indictment alleges that, over a two-year period, defendant caused his tax preparer to

file individual income tax returns with substantially inflated expenses and deductions to reduce his taxable income. Defendant alone provided false information to his tax preparer in the form of emailed worksheets in connection with the preparation of his individual income tax returns in 2019 and 2020. Defendant also signed IRS Form 8879s under penalty of perjury, which indicated that he had examined his individual income tax returns and accompanying schedules and statements, and, to the best of his knowledge, they were true, correct, and complete.

### B. Defendant's Rule 16.1(g) Disclosure

This case was originally set for trial on December 11, 2023. *See* Dkt. 20. On November 17, 2023, the Court continued the trial until January 16, 2024 due to concerns about COVID-19. Dkt. 33. On the day of the status hearing to continue the trial, defense counsel verbally notified counsel for the government that defendant may call an expert witness at trial. On November 28, 2023, defense counsel emailed the government a proposed witness list, which disclosed Dr. Steven Farmilant, Psy.D as a potential trial witness.

On December 8, 2023, defense counsel disclosed to the government by email that they intend to call Dr. Steven Farmilant, Psy.D., as an expert witness at trial. According to his website, Dr. Farmilant is a licensed clinical psychologist specializing in psychological and forensic evaluation. *See* Steven Farmilant, Psy.D, http://www.stevenfarmilant.com. At the government's request, defense counsel attached a portion of Dr. Farmilant's draft report and noted that Dr. Farmilant had run cognitive tests on defendant and "found him to be cognitively deficient in several areas, especially math." According to defendant, the "primary relevance" of Dr.

Farmilant's opinions would be to support defense counsel's argument that "unlike a normal person, if [defendant] was shown these tax returns, he wouldn't immediately recognize that the deductions are not remotely plausible."

On December 12, 2023, defense counsel produced to the government defendant's high school and community college transcripts. On December 18, 2023, defense counsel produced to the government 39 pages of defendant's pediatric medical records. The next day, on December 19, 2023, defendant disclosed by email Dr. Farmilant's report, titled "Confidential Forensic Psychological Evaluation." Ex. 1 ("Defendant's Expert Disclosure" filed under seal). According to Defendant's Expert Disclosure, defendant expects that Dr. Farmilant will testify at trial to a variety of opinions regarding defendant's cognitive abilities and personality:

- First, Dr. Farmilant will opine that defendant's childbirth caused "deprivation of oxygen to his brain," resulting in "damage to areas of his brain associated with making accurate perceptions of the world around him, processing speed, the ability to organize complex concepts such as mathematics, visual organization, abstract problem solving, and to a lesser extent, working memory." *Id.* at 2. Dr. Farmilant has diagnosed defendant with "Mild Neurocognitive Disorder." *Id.* (hereinafter, "Opinion One").

- Second, Dr. Farmilant will opine that defendant is "a psychologically naïve individual who strives to keep his life as uncomplicated as possible." *Id.* (hereinafter, "Opinion Two").

3

- Third, Dr. Farmilant will testify that "it is unlikely [defendant] had the motivation, cognitive ability, character disturbance or malicious intent to defraud the government by submitting false federal income tax returns." *Id.* (hereinafter, "Opinion Three").

- Fourth, Dr. Farmilant will opine that "engaging in such deception [the filing of false tax returns] would overburden [defendant's] emotion and cognitive limitations," and that defendant "has a lifelong history of avoiding behaviors that would overburden [his] limitations." *Id.* (hereinafter, "Opinion Four").

Dr. Farmilant purports to base his opinions on a series of cognitive tests that he administered to defendant, and his own assessment based on conversations with the defendant, defendant's mother Ava D'Ambrosio, and defendant's employer, Anthony DeMarco. *Id.* at 1. Dr. Farmilant stated in his report that defendant's medical records, some of which were disclosed to the government before Defendant's Expert Disclosure, "were not available at the time of this report." *Id.* at 2. Defendant has not disclosed any raw data or the underlying test results from the cognitive tests.

## II.    ARGUMENT

The Court should exclude Dr. Farmilant's testimony at trial pursuant to Federal Rules of Evidence 702, 704(b), and 403, and Federal Rule of Criminal Procedure 12.2(b). The proposed testimony does not meet the requirements of expert testimony, is of virtually no probative value, and is likely to mislead and confuse the jury. Moreover, certain of Dr. Farmilant's opinions violate Rule 704(b) because they speak directly to defendant's inability or incapacity to form the requisite intent to

commit the charged offenses. Additionally, the timing of the expert disclosure has precluded the government from meaningfully challenging Dr. Farmilant's opinions by retaining its own expert to conduct interviews and examinations of defendant and, if appropriate, to review any test results and medical records disclosed by defendant.

In the alternative, to the extent the Court deems it necessary, the government asks the Court to exercise its gatekeeping function and conduct a *Daubert* hearing to determine whether any portion of Dr. Farmilant's expert testimony is relevant, reliable, and admissible under Rule 702.

Finally, to the extent that the Court permits Dr. Familant to testify in any capacity, the Court should prohibit him from introducing hearsay statements, including from the defendant, during the course of his testimony.

### A. Legal Standard

Under Federal Rule of Evidence 702:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that: (a) the expert's scientific, technical, or other specialized knowledge *will help the trier of fact to understand the evidence or to determine a fact in issue*.

(emphasis added). A trial court has broad discretion to determine the admissibility of evidence, subject to the Federal Rules of Evidence. *United States v. Carson*, 870 F.3d 584, 593 (7th Cir. 2017). Federal Rule of Evidence 702, as interpreted by *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993), governs the admissibility of expert opinion testimony. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 149 (1999). The purpose of the *Daubert* inquiry is to scrutinize whether proposed expert

testimony has "the same level of intellectual rigor that characterizes the practice of an expert in the relevant field," such that it is reliable enough to present to a jury. *Lapsley v. Xtek, Inc.*, 689 F.3d 802, 805 (7th Cir. 2012) (quoting *Kumho Tire*, 526 U.S. at 152).

In evaluating a motion to exclude expert testimony under Rule 702 and *Daubert*, the Court considers whether the proffered expert: (1) is qualified; (2) has employed a reliable methodology; (3) offers opinions that follow rationally from the application of the expert's methodology and qualifications; and (4) presents testimony on a matter that is relevant to the case at hand. *See Kumho Tire*, 526 U.S. at 151–53; *Daubert*, 509 U.S. at 589–93; *Hartman v. EBSCO Indus., Inc.*, 758 F.3d 810, 817 (7th Cir. 2014) ("The rubric for evaluating the admissibility of expert evidence considers whether the expert was qualified, whether his methodology was scientifically reliable, and whether the testimony would have assisted the trier of fact in understanding the evidence or in determining the fact in issue.").

The party seeking to introduce expert testimony bears the burden of showing that it meets the applicable standards. *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009). Trial courts are obligated to act as gatekeepers to ensure that the "proposed expert testimony is both relevant and reliable." *Higgins v. Koch Dev. Corp.*, 794 F.3d 697, 704 (7th Cir. 2015); *see also Kumho Tire Co., Ltd.*, 526 U.S. at 147–49; *Daubert*, 509 U.S. at 589.

To determine reliability, the proponent must show that the expert's testimony is based on "sufficient facts or data," that it is "the product of reliable principles and

methods," and that those methods have been "reliably applied . . . to the facts of the case." Fed. R. Evid. 702. Expert testimony may not be based on "subjective belief or unsupported speculation." *Daubert*, 509 U.S. at 590; *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) ("A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered."). The proffered opinion must be informed by the witness's expertise, rather than simply constitute an opinion offered by a purported expert. *United States v. Hall*, 93 F.3d 1337, 1343 (7th Cir. 1996). "Unless the expertise adds something, the expert at best is offering a gratuitous opinion, and at worst is exerting undue influence on the jury that would be subject to control under Fed. R. Evid. 403." *Id.* at 1343.

Thus, even where evidence is otherwise admissible under Rule 702 and *Daubert*, the Court may exclude it under Federal Rule of Evidence 403, which "permits a district court to 'exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.'" *United States v. Boros*, 668 F.3d 901, 909 (7th Cir. 2012) (alteration in original) (quoting Fed. R. Evid. 403). "Expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it. Because of this risk, the judge in weighing possible prejudice against probative force under Rule 403 . . . exercises more control over experts than over lay witnesses." *Daubert*, 509 U.S. at 595.

### B.    Argument

#### 1.    The Court Should Exclude Dr. Farmilant's Testimony in its Entirety.

The Court should exclude Dr. Farmilant's testimony in its entirety under Federal Rules of Evidence 702, 704(b), 403, and Federal Rule of Criminal Procedure 12.2(b).  The Court need not hold a *Daubert* hearing where, as here, there is a "sufficient basis for [exclusion] without holding a hearing."  *Kirstein v. Parks Corp.*, 159 F.3d 1065, 1067 (7th Cir. 1998); *see also United States v. Alatorre*, 222 F.3d 1098, 1102 (9th Cir. 2000) ("Nowhere in *Daubert, Joiner,* or *Kumho Tire* does the Supreme Court mandate the form that the inquiry into relevance and reliability must take.")

#### a.    Dr. Farmilant's Proposed Testimony Does Not Meet the Standards of Rule 702.

The Court should exclude Dr. Farmilant's testimony in its entirety under Rule 702.  As noted above, Rule 702 "imposes a special obligation upon a trial judge to 'ensure that any and all scientific testimony . . . is not only relevant, but reliable.'" *Kumho Tire*, 526 U.S. at 147 (quoting *Daubert*, 509 U.S. at 589).  Under Rule 702, to be relevant, the proposed expert testimony must "help the trier of fact to understand the evidence or to determine a fact in issue."  Dr. Farmilant's proposed testimony plainly fails in all respects, and the Court need not hold a hearing to exclude it.

#### i.    The Proposed Testimony Is Not Relevant.

The Court should first exclude Dr. Farmilant's testimony for a very simple reason: it will not help the jury "to understand the evidence or to determine a fact in issue" in the case.  Fed. R. Evid. 702(a).

Dr. Farmilant's opinions, which are vague and speculative, simply have no relevance to any of the elements or evidence at issue in the case. For example, neither Dr. Farmilant's Opinion One, that defendant suffered "deprivation of oxygen to his brain" at birth, nor his Opinion Two, that defendant is "a psychologically naïve individual who strives to keep his life as uncomplicated as possible," Ex. 1 at 2, have any bearing on whether defendant's 2019 and 2020 tax returns were false, or whether defendant willfully caused those returns to be filed, and they are not relevant to the case simply because Dr. Farmilant says so. *See Joiner,* 522 U.S. at 146 ("[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert.").

Although the government will prove the falsity of certain business expenses related to business meals and mileage and charitable contributions, that the expenses and deductions were false will not be disputed. After the IRS confronted defendant about the falsity of his returns, defendant caused the filing of amended tax returns for 2019 and 2020 that corrected the blatantly false original filings. Moreover, there will likely be no dispute that defendant signed the IRS Form 8879s reflecting that, under penalty of perjury, he had reviewed the returns and that they were correct. With those facts not actually in dispute, whether defendant had a neurocognitive disorder due to oxygen deprivation at birth or was naïve and sought to keep life "uncomplicated," is simply not relevant to whether defendant willfully caused false tax returns to be filed with the IRS.

The only arguable relevance of Dr. Farmilant's opinions lie in Opinions Three and Four, which amount to speculation that defendant is "unlikely" to have intentionally filed false tax returns, because such an intentional act would "overburden [his] emotion and cognitive limitations." Ex. 1 at 2. However, for reasons discussed below, these opinions are unreliable and separately inadmissible under Rules 704(b) and 403.

### ii. The Proposed Testimony Is Unreliable.

Dr. Farmilant's proposed testimony is also unreliable, as it not based on sufficient facts or data, nor is it the product of reliable principles and methods. Dr. Farmilant bases his opinions on the premise that defendant suffers from a brain injury caused by a difficult childbirth, which now impacts his psychological and cognitive abilities. But the basis for that premise is nothing more than a phone conversation with defendant's mother. Indeed, according to Defendant's Expert Disclosure, Dr. Farmilant neither reviewed defendant's medical records nor spoke with any of his medical providers. And while Dr. Farmilant may have run defendant through several psychological tests, he does not provide data for all those tests, leaving the government and the Court unable to assess the reliability of his opinions. Taken together, Dr. Farmilant's proposed testimony is woefully unreliable and must be excluded.

First, Dr. Farmilant's opinions are not based on sufficient facts or data. Dr. Farmilant begins his report by stating the following alleged facts:

Nikko D'Ambrosio survived a complicated birth that apparently involved deprivation of oxygen to his brain through prenatal and neonatal complications. This deprivation resulted in damage to areas of

> his brain associated with making accurate perceptions of the world around him, processing speed, the ability to organize complex concepts such as mathematics, visual organization, abstract problem solving, and to a lesser extent, working memory.

Ex. 1 at 2. It is at first unclear where Dr. Farmilant obtained these facts, as they are without citation, but later in his report, Dr. Farmilant writes that he "conducted a telephone interview with [defendant's] mother and his current employer. ***Much of the background history reported above came from the interview with Mrs. D'Ambrosio.***" *Id.* at 6 (emphasis added). Dr. Farmilant further writes that "[a]lthough medical records were not available at the time of this report, symptoms reported by [defendant] and his mother are consistent with damage to his brain," and then speculates as to the cause by listing nearly a dozen potential medical conditions tied to complicated gestation and childbirth. *Id.* at 4. Stated simply, historical hearsay reported by defendant's mother is not a sufficient basis to conclude that defendant suffered a brain injury. *See e.g.,* 1 Bruce H. Stern & Jeffrey A. Brown, *Litigating Brain Injuries* § 6:12.40 (perm. ed., rev. vol. 2021) ("A diagnosis of traumatic brain injury is a clinical diagnosis based on history, review of medical records, clinical examination and diagnostic testing. Together, utilizing all of these sources, a clinician can then make an appropriate diagnosis of traumatic brain injury."). It is the Court's task "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the

relevant field." *Kumho Tire,* 526 U.S. at 152. Defendant's proposed expert testimony does not meet this standard.[1]

Second, Dr. Farmilant's opinions are not based on reliable principles and methods. According to Defendant's Expert Disclosure, Dr. Farmilant cites the DSM-V, and states that it is "[his] opinion to a reasonable degree of certainty as a clinical and forensic psychologist that Mr. D'Ambrosio [ ] meets the diagnostic criteria for Mild Neurocognitive Disorder." Ex. 1 at 2. But the DSM-5 diagnostic criteria for Mild Neurocognitive Disorder requires first and foremost "[e]vidence of significant cognitive decline from a previous level of performance in one or more cognitive domains (complex attention, executive function, learning and memory, language, perceptual–motor, or social cognition)." *Diagnostic and Statistical Manual of Mental Disorders: DSM-5.* 5th ed., 331.83 (G31.84), American Psychiatric Association, 2013. And here, because Dr. Farmilant claims defendant suffered brain injuries related to his birth, there simply cannot be, as a matter of logic, "evidence of significant cognitive decline from a previous level of performance." Courts have excluded the testimony of psychological experts where no medical records were reviewed, and the diagnostic criteria appear not to be met. *See, e.g., El Ansari v. Graham*, No. 17-CV-3963 (VEC), 2019 WL 3526714, at *5 (S.D.N.Y. Aug. 2, 2019) ("There may well be scenarios in which a psychologist can reliably diagnose a patient without the aid of

---

[1] Even if the above facts were sufficient to diagnose defendant with a brain injury tied to a difficult childbirth (and they are not), Dr. Farmilant, a psychologist, would be unqualified to render such a diagnosis.

medical records, but, in this case, failure to review Plaintiff's medical records is particularly troubling because an express requirement of the DSM-V guidelines was not met.").

In sum, Dr. Farmilant has relied on insufficient data and failed to employ reliable methods. It would therefore be inappropriate to permit defendant to present such unreliable information to the jury.

### b. Dr. Farmilant's Proposed Testimony Violates Rule 704(b).

The Court should also prohibit Dr. Farmilant from testifying, because the thrust of his opinions is that defendant lacks the ability, capacity, or predisposition to willfully file false tax returns (Opinions Three and Four). Such opinions are impermissible under Rule 704(b) and must be excluded.

Rule 704(b) states that, "[i]n a criminal case, an expert witness must not state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense. Those matters are for the trier of fact alone." The Seventh Circuit has interpreted Rule 704(b) "to preclude psychiatric opinion testimony on the question of a defendant's capacity to form the requisite intent." *Haas v. Abrahamson*, 910 F.2d 384, 397 (7th Cir. 1990) (citing *United States v. Hillsberg,* 812 F.2d 328, 332 (7th Cir. 1987)).

As noted in the Government's Consolidated Motions *in Limine* (Dkt. 42 at 10), an element for the jury to decide at trial is whether defendant willfully caused the filing of false tax returns when he directed his tax prepare to file his original returns—that is, whether he "knew that he had a legal duty to file a truthful tax

return, but when he signed the return, he did not believe that it was truthful." Seventh Circuit Pattern Jury Instructions, 26 U.S.C. § 7206(1) Fraud and False Statements—Elements, at 1072 (2023). It is "the jury's obligation to decide the ultimate issue of whether the [tax] returns were willfully falsified which is generally the focal point of § 7206 cases." *United States v. Whyte*, 699 F.2d 375, 379 (7th Cir. 1983); *see also United States v. Watson*, 260 F.3d 301, 310 (3d Cir. 2001) ("The defendant's intent is an ultimate issue of fact that the jury alone must decide.") (citing Fed. R. Evid. 704(b)).

But according to Dr. Farmilant's report, he plans to answer this question for the jury by testifying that defendant lacks the ability or capacity to form the requisite intent (and therefore lacked intent at the time of filing). Dr. Farmilant's report states at the outset that he was asked by defense counsel for "[a] specific referral question regard[ing] [defendant's] ability and capacity to formulate an intent to willfully falsify his federal income tax return." Ex. 1 at 1. In answering the specific referral question, Dr. Farmilant offered Opinions Three and Four—that based on his testing of the defendant, "it is unlikely [defendant] had the motivation, cognitive ability, character disturbance or malicious intent to defraud the government by submitting false federal income tax returns." *Id.*; *see also id.* at 11 (opining that "[defendant's] personality is not consistent with a criminological mindset."). Dr. Farmilant further claims that "engaging in such deception [the filing of false tax returns] would overburden [defendant's] emotion and cognitive limitations," and that defendant "has a lifelong history of avoiding behaviors that would overburden [his] limitations." *Id.* Such

conclusions, which explicitly reference both defendant's specific intent and his capacity to form the requisite intent, are prohibited by Rule 704(b).  *See, e.g., United States v. Love*, 336 F.3d 643, 647 (7th Cir. 2003) ("The critical question is whether the expert referred to the intent of the defendant.") (citing *United States v. Lipscomb,* 14 F.3d 1236, 1239 (7th Cir. 1994)).[2]

Dr. Farmilant's opinions regarding defendant's inability or incapacity to form the requisite intent mirror those other courts have found to be inadmissible under Rule 704(b).  For example, in *United States v. Bennett*, the Third Circuit evaluated a district court's exclusion of expert trial testimony regarding a defendant's ability to willfully file false tax returns—the same offense at issue here.  161 F.3d 171 (3d Cir. 1998).  In affirming the district court, the *Bennett* panel wrote:

> We believe the District Court properly excluded the questions asking whether Bennett's mental disorders (1) "precluded him from forming the intent to defraud"; (2) made it "highly unlikely that he could form the intent to defraud"; (3) made it "unlikely that he would have engaged in conduct designed to defraud"; (4) precluded him "from forming the specific intent to defraud individuals"; (5) made it "unlikely that he could defraud the individuals and entities"; (6) "affect[ed] his ability to knowingly and willfully submit false statements to the I.R.S."; and (7) made "it unlikely that he would knowingly and willfully submit false statements to the I.R.S."

---

[2] It is of no moment that Dr. Farmilant largely focuses his opinion on defendant's ability or capacity to act willfully in the general sense and not on the ultimate question of whether defendant acted willfully as to the offenses in question, because the former is logically antecedent to the latter.  *See, e.g., United States v. Pohlot*, 827 F.2d 889, 903 (3d Cir. 1987) ("Whether a defendant has the capacity to form mens rea is, of course, logically connected to whether the defendant possessed the requisite mens rea.").

*Id.* at 183. "These questions," the court explained, "go beyond merely assisting the jury, explaining the nature of Bennett's mental disease, or describing the typical effect of Bennett's disorders on his mental state. Instead, they require the expert witness to state expressly whether Bennett possessed the requisite intent to commit the crimes charged in the indictment." *Id.* Other courts to have addressed similar expert testimony have also concluded such opinions are inadmissible under Rule 704(b). *See, e.g., United States v. Gillis*, 938 F.3d 1181, 1195 (11th Cir. 2019) (affirming the exclusion of expert testimony that "was simply a thinly veiled attempt by the defense to offer an expert opinion that Gillis lacked the requisite intent"); *United States v. Dennison,* 937 F.2d 559, 565 (10th Cir. 1991) (holding the trial court properly excluded testimony from an expert that a hypothetical person suffering from the same mental disorder as the defendant could not form the specific intent to commit assault).

Dr. Farmilant's Opinions Three and Four are indistinguishable from those found inadmissible by the Third Circuit in *Bennett*, and explicitly reference the defendant's intent as prohibited by the Seventh Circuit in *Love*. The Court should therefore preclude Dr. Farmilant from testifying to them at trial under Rule 704(b).

### c. The Court should exclude Dr. Farmilant's Testimony under Rule 403.

The Court should also exclude Dr. Farmilant's testimony under Rule 403—namely, because its probative value is negligible and substantially outweighed by a danger of unfair prejudice, confusing the issues, or misleading the jury.

As discussed above, the probative value of Dr. Farmilant's opinions are extremely low. There is simply no tying his opinions of defendant's neurocognitive deficits, his interpersonal naivete, or his efforts to keep his life uncluttered to the issues in this case (except, perhaps, as an effort to negate intent, which, for the reasons discussed above, violate Rule 704(b)). The more likely aim of Dr. Familant's testimony is to mislead, confuse, and prejudice the jury into acquitting defendant. Such considerations are impermissible, and the Court can exclude on this basis without even deciding the Rule 702 issue. *See, e.g., Accely v. Consol. Edison Co. of New York, Inc.*, No. 19CIV5984DCSLC, 2023 WL 3025436, at *2 (S.D.N.Y. Apr. 20, 2023) ("I find that the probative value of Dr. Janoson's testimony is low and is substantially outweighed by the risk of unfair prejudice, confusion, and delay. I do not need to reach Accely's *Daubert* argument."). Indeed, courts routinely exclude psychologists from testifying where, as here, the proposed expert testimony seeks to justify or excuse a defendant's bad acts. For example, in *United States v. Davis*, the D.C. Circuit affirmed the district court's exclusion of a forensic psychologist as a defense expert in a criminal tax fraud case under Rules 702 and 403 where the proposed expert planned to testify that the defendant's ADHD could cause her "difficulty completing tasks and accurately filling out detailed forms," because it is "precisely the type of justification and excuse evidence that is not permitted because of the danger that it will mislead the jury." 863 F.3d 894, 908 (D.C. Cir. 2017).

The same is true here. Should Dr. Farmilant be permitted to testify as to his opinions that defendant's neurocognitive disorder negates his intent, there is a

substantial risk that the jury will be misled into deciding the case on impermissible factors such as sympathy for defendant or a misunderstanding of the law (which is belied by the Forms 8879 that defendant signed in connection with the filing of his returns). Accordingly, the Court should exclude Dr. Farmilant's testimony under Rule 403.

### d. The Court Should Exclude Defendant's Proposed Expert Under Federal Criminal Rule 12.2(b).

Even if the Court were to determine that Dr. Farmilant's testimony was relevant, based on reliable methodology, and not excludable under Rule 403, the Court should also prohibit defendant from calling Dr. Farmilant at trial due to the untimeliness of his expert disclosure, which has prejudiced the government's ability to respond at trial. Federal Rule of Criminal Procedure 12.2(b) provides that

> If a defendant intends to introduce expert evidence relating to a mental disease or defect or any other mental condition of the defendant bearing on either (1) the issue of guilt or (2) the issue of punishment in a capital case, the defendant must—within the time provided for filing a pretrial motion or at any later time the court sets—notify an attorney for the government in writing of this intention and file a copy of the notice with the clerk. The court may, for good cause, allow the defendant to file the notice late, grant the parties additional trial-preparation time, or make other appropriate orders.

"The objective" of Rule 12.2(b), "is to give the government time to prepare to meet the issue, which will usually require reliance upon expert testimony." Fed. Crim. P. 12.2(b) 1974 Advisory Committee Notes. "Failure to give advance notice commonly results in the necessity for a continuance in the middle of a trial, thus unnecessarily delaying the administration of justice." *Id*. Rule 12.2(c)(1)(B) provides, in relevant part, "[i]f the defendant provides notice under Rule 12.2(b), the court may, upon the

government's motion, order the defendant to be examined under procedures ordered by the court." Rule 12.2(d) provides, in pertinent part, that if the defendant does not give notice under Rule 12.2(b), "[t]he court may exclude any expert evidence from the defendant on the issue of the defendant's mental disease, mental defect, or any other mental condition bearing on the defendant's guilt."

Here, defendant's late expert disclosure, less than a month before trial and right before the looming holiday season, has prevented the government from responding to defendant's proposed expert testimony in the appropriate manner, which would usually call for a court-ordered examination of the defendant by a government rebuttal expert, and testimony by that expert at trial. *See* Fed. R. Crim. P. 12.2(c)(1)(B). Indeed, "fundamental fairness and the design of the Federal Rules of Criminal Procedure would permit the government first to make a motion for an examination of the defendant and then would permit that examination to go forward before the government expert would have to render a rebuttal report." *United States v. Ray*, No. 20-CR-110 (LJL), 2021 WL 5493839, at *3 (S.D.N.Y. Nov. 22, 2021). Here, such an outcome would require the Court to move the trial date and set a date for the government have a rebuttal expert examine defendant and draft a rebuttal report. The only alternative outcome is the exclusion of defendant's expert, and that result is appropriate here, where defendant has failed to give adequate notice to allow the government to examine defendant and prepare an appropriate response before trial on January 16.

2. **In the Alternative, the Court Should Conduct a *Daubert* Hearing.**

In the alternative, should the Court find it necessary, the government moves for a *Daubert* hearing on any portion of Dr. Farmilant's proposed testimony that the Court does not exclude without a hearing, because Defendant's Expert Disclosure fails to establish an appropriate basis for the proposed testimony. For the reasons discussed above, Dr. Farmilant's proposed testimony is both irrelevant and unreliable under Rule 702, and defendant should be held to his burden to explain why his proposed expert should testify at trial. *Lewis*, 561 F.3d at 705 (the party seeking to introduce expert testimony bears the burden of showing that it meets the applicable standards).

3. **The Court Should Prohibit Dr. Farmilant from Testifying to Hearsay from His Interview with Defendant and Defendant's Mother.**

Separate and apart from the other bases for exclusion, to the extent that the Court intends to permit defendant to call Dr. Farmilant at trial, the government moves to preclude Dr. Farmilant from testifying regarding hearsay from his conversation with defendant, defendant's mother, and defendant's employer. At pages 7 and 8 of Defendant's Expert Disclosure, Dr. Farmilant quotes defendant extensively while discussing his interview with defendant and with defendant's mother and employer. In several instances, Dr. Farmilant quotes defendant, previewing defendant's planned defenses to shift blame to his relative and the tax preparer who helped defendant file his tax returns. These quotes are classic hearsay,

inadmissible under Rule 802, and the Court should prohibit Dr. Farmilant from testifying or alluding to them at trial.

"Hearsay evidence is generally inadmissible unless an exception applies." *United States v. Wehrle*, 985 F.3d 549, 555 (7th Cir. 2021). Hearsay is defined as an out of court statement offered for the truth of the matter asserted. Fed. R. Evid. 801(c). While an expert may rely on hearsay in forming his admissible expert opinions, "[t]he fact that inadmissible evidence is the (permissible) premise of the expert's opinion does not make that evidence admissible for other purposes, purposes independent of the opinion." *Matter of James Wilson Assocs.*, 965 F.2d 160, 173 (7th Cir. 1992).

But this is precisely the evidence Dr. Farmilant relies upon, almost exclusively, in Defendant's Expert Disclosure. For example, Dr. Farmilant mentions the following conversation with defendant regarding the counts at issue in this case, and defendant's explanation for filing false tax returns:

> Mr. D'Ambrosio stated he is currently indicted on a criminal tax fraud case due to overstated deductions on his federal tax returns. When asked how this happened, he stated, "I don't know, I'm not good with numbers. I was ill advised by an individual who did my taxes and a bad accountant. He had experience doing taxes. He was a relative. Upon everything we don't talk any more."

Ex. 1 at 7. Later, Dr. Farmilant again quotes defendant's explanation for filing false tax returns:

> I asked why he did not review the tax forms before he signed them. "If I feel there is too much thrown at me, I get discombobulated. Math, numbers does it to me. I could never keep a mileage sheet. That's why I reached out to a relative (for help with his income taxes). He was

> overextending the miles. I never met my accountant. I signed what was
> sent to me. I didn't review anything. I can't read that type of thing".

*Id*. at 7-8. These explanations from defendant allude to a defense that defendant

plans to present at trial—i.e., that he did not willfully file false tax returns. If offered

for the truth of the matter asserted, they are undoubtedly hearsay, and no hearsay

exception applies that would permit Dr. Farmilant to testify to them at trial. If

defendant plans to take the witness stand at trial and assert that someone else is to

blame for his filing of false tax returns, that is his right, and he will be subject to

cross examination on those assertions. But the Court should preclude defendant from

using his expert as a conduit for otherwise inadmissible hearsay testimony, which

would permit defendant to avoid an appropriate cross examination. *See, e.g., United

States v. Tipton*, 269 F. App'x 551, 560 (6th Cir. 2008) (affirming the exclusion of

expert testimony, because "[i]t appears likely in this case that the defense was simply

attempting to use [an expert] as a 'conduit' for the admission of the Defendants'

otherwise inadmissible hearsay statements regarding their assets").

## C. Conclusion

For these reasons, the government respectfully requests that the Court exclude

the testimony of Dr. Farmilant under Federal Rules of Evidence 702, 403, and 704(b),

and Federal Rule of Criminal Procedure 12.2(b). To the extent the Court deems it

necessary to evaluate Dr. Farmilant's testimony, the government requests a *Daubert*

hearing. To the extent that the Court allows defendant to introduce any aspect of Dr.

Farmilant's testimony, the government requests that the Court preclude Dr.

Farmilant from introducing inadmissible hearsay, under Federal Rule of Evidence
801.

Respectfully submitted,

MORRIS PASQUAL
Acting United States Attorney

By:  /s/ *Brandon D. Stone*
Brandon D. Stone
Richard M. Rothblatt
Assistant United States Attorneys
219 South Dearborn Street, Fifth Floor
Chicago, Illinois 60604
(312) 353-5300

Dated: December 29, 2023

23