UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA

        v.

NIKKO D'AMBROSIO

No. 23 CR 323

Hon. Thomas M. Durkin

### GOVERNMENT'S REPLY IN SUPPORT OF ITS CONSOLIDATED MOTIONS *IN LIMINE* AND MOTION TO EXCLUDE TESTIMONY OF DR. STEVEN FARMILANT

The UNITED STATES OF AMERICA, through its attorney MORRIS PASQUAL, Acting United States Attorney for the Northern District of Illinois, respectfully submits this reply in support of its consolidated motions *in limine* and motion to exclude the testimony of Dr. Steven Farmilant (Dkts. 42, 43).[1]

### Argument

### I.    The Court Should Exclude Defendant's Proposed Expert from Testifying at Trial.

Defendant's response confirms that he has no basis to call Dr. Farmilant and that permitting his expert opinion testimony at trial would run afoul of Federal Rules of Evidence 702, 704(b), 403, and 801, and Federal Rule of Criminal Procedure 12.2. *See* Dkt. 43 at 7-21. Defendant's response—which is largely silent on the above objections—attempts to rewrite Dr. Farmilant's opinions to fit his narrative and only confirms the government's concerns that his testimony is neither

---

[1] The government filed its consolidated motions *in limine* and motion to exclude the trial testimony of Dr. Steven Farmilant in two separate filings. *See* Dkt. 42 and 43, respectively. Defendant responded to both filings in a single consolidated response in opposition. Dkt. 45. Accordingly, the government files this single reply to defendant's arguments.

relevant nor appropriate. The Court should therefore exclude Dr. Farmilant from testifying at trial.

### A. Defendant Agrees Not to Solicit Testimony from Dr. Farmilant Regarding Opinions Three and Four.

As discussed in the Government's Motion to Exclude the Trial Testimony of Dr. Steven Farmilant, defendant's December 19, 2023 disclosure provided the following expert opinions:

> Based on information gathered in this evaluation, it is my opinion to a reasonable degree of certainty as a clinical and forensic psychologist that Mr. D'Ambrosio a) meets the diagnostic criteria for Mild Neurocognitive Disorder, b) that that it is unlikely Mr. D'Ambrosio had the motivation, cognitive ability, character disturbance or malicious intent to defraud the government by submitting false federal income tax returns, c) that engaging in such deception would overburden his emotional and cognitive limitations and d) he has a lifelong history of avoiding behaviors that would overburden these limitations.

Dkt. 44 at 2 (the "Original Opinions," numbered "Opinions One through Four" in the government's motion).

Defendant implicitly agrees with the government's contention that Dr. Farmilant's primary conclusion that defendant cannot, or was "unlikely to," form the requisite intent violates Rule 704(b). Conceding as much, defendant now promises not to solicit such improper intent testimony at trial. *See* Dkt. 43 at 5 ("Defendant will not introduce Dr. Familant's conclusion that Defendant lacked the capacity to act willfully."). Accordingly, the government understands that, even if permitted to testify, Dr. Farmilant will not testify to Opinions Three and Four.

### B. Defendant Cannot Recast Dr. Farmilant's Remaining Opinions to Fit His Defense.

The Court should also reject defendant's attempts to rewrite Dr. Farmilant's

remaining expert opinions to fit his desired narrative.

As set forth in the government's motion, each of the Original Opinions offer virtually no probative value and are likely to mislead and confuse the jury. Dkt. 44 at 8-12. The Original Opinions do not help the jury "understand the evidence or to determine a fact in issue," under Federal Rule of Evidence 702(a)-(d), and Dr. Farmilant's methodology is unreliable. Moreover, the government is prejudiced because of the late disclosure of the Original Opinions (and the lack of disclosure of the underlying test results). Indeed, the probative value of Dr. Farmilant's opinion is extremely low, and any conceivable relevance is far outweighed by the risk of unfair prejudice and confusing the jury. Fed. R. Evid. 403.[2] The Court should therefore exclude Dr. Farmilant's testimony regarding the Original Opinions, or, in the alternative, hold a *Daubert* hearing.

In his response, defendant does not even attempt to defend the Original Opinions, and now claims that Dr. Farmilant will "simply tell the jury about the results of the tests [he ran on defendant], tell the jury that the results of these tests show low-IQ and cognitive impairment, *and then opine that a person with such*

---

[2] Defendant also seeks to alleviate any Rule 801 hearsay concerns by stating that "Defendant will not introduce through Dr. Familant, any conversations that he had with Defendant's mother." Dkt. 45 at 5. However, defendant further claims "Defendant's mother may testify at trial to lay the foundation for Dr. Familant's opinions. In addition to Defendant's mothers' testimony, Defendant intends to introduce educational and medical records to support the foundation for Dr. Familant's testimony." *Id.* This proposed presentation only underscores the sideshow defendant hopes to present at trial. Defendant's childhood academic performance and whether he is "bad at math" has no bearing on whether he claimed false federal income tax deductions. To permit defendant to present this evidence will only serve to confuse and prejudice the jury into (defendant hopes) a nullification verdict. Moreover, the evidence defendant seeks to present constitutes inadmissible hearsay, and defendant has provided no basis to authenticate the records he seeks to admit (educational records and medical records). Accordingly, the Court should prohibit all the above proposed testimony and evidence under Rule 403.

***impairments would not necessarily immediately recognize that tax returns contained egregious errors***." Dkt. 45 at 5 (emphasis added) (the "New Opinion"). The New Opinion appears nowhere in Dr. Farmilant's report, and the Court should not permit defendant to create a moving target regarding his expert testimony. *See* Fed R. Crim. P. 16(b)(1)(C)(iii) (the disclosure for each expert witness must contain, among other items, "a complete statement of all opinions that the defendant will elicit from the witness in the defendant's case-in-chief" and "the bases and reasons for them").

Even if Dr. Farmilant's New Opinion had been properly disclosed in his December 19, 2023 disclosure, and it was not, the testimony is similarly unhelpful to the jury under Federal Rule of Evidence 702, and unreliable under *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993). As set forth in the government's consolidated motions *in limine*, the government's evidence will establish that defendant supplied the false information that served as the basis for the false tax filings in 2019 and 2020. The issue is not defendant's inability to recognize that the tax returns contained errors, but that defendant provided false information that led to the creation of false returns in the first place, which defendant then directed his tax preparer to file with the IRS. Purported deficiencies in math and other purported cognitive impairments do not, in any way, obviate defendant's responsibility for filing accurate tax returns with the IRS. Thus, Dr. Farmilant's New Opinion will be similarly unhelpful to the jury and risk juror confusion. The Court should preclude it.

4

### C. Defendant Has Not Complied with Federal Criminal Rule 12.2(b).

Finally, even Dr. Farmilant's testimony were permissible under the Federal Rules of Evidence (which it is not), the Court should still exclude Dr. Farmilant, because defendant has not even attempted to comply with the directives of Criminal Rule 12.2. Rule 12.2(b) provides that,

> [i]f a defendant intends to introduce expert evidence relating to a mental disease or defect or any other mental condition of the defendant bearing on . . . the issue of guilt . . . the defendant must—within the time provided for filing a pretrial motion or at any later time the court sets—notify an attorney for the government in writing of this intention and file a copy of the notice with the clerk.

Here, as defendant admits in his response, he plans to introduce at trial expert testimony regarding a mental condition bearing on the issue of guilt. *See, e.g.,* Dkt. 45 at 4 (claiming that the results of cognitive tests show that defendant is "cognitively deficient in several areas, especially math," and therefore "he wouldn't immediately recognize that the deductions are not remotely plausible"); *see also id.* at 5 (stating that Dr. Farmilant will "tell the jury that the results of these tests show [defendant's] low-IQ and cognitive impairment"). And though the defendant claims these purported cognitive difficulties were likely caused by "frontal-lobe impairment" at birth—a physical condition—they are still covered by the requirements of Rule 12.2. *See United States v. Cervone*, 907 F.2d 332, 346 (2d Cir. 1990) (holding that Rule 12.2(b) notice was required, because "[e]ven if the brain is a 'physical' organ reposing in the skull, it is nevertheless responsible for the vast majority of 'mental' difficulties"). Thus, the Rule required defendant to file a notice with the Court.

5

However, to date, defendant has not filed any such notice. Defendant's failure to comply with the explicit directive of the rule is alone grounds for the Court to exclude the testimony of his proposed expert. *See* Fed. R. Crim. P. 12.2(d)(1)(A) ("The court may exclude any expert evidence from the defendant on the issue of the defendant's mental disease, mental defect, or any other mental condition bearing on the defendant's guilt . . . if the defendant fails to . . . give notice under Rule 12.2(b)."). Given the inadmissibility of Dr. Farmilant's proposed expert testimony discussed at length in the government's motion in *limine* (Dkt. 43), combined with defendant's failure to comply with the explicit directives of Rule 12.2(b), the only appropriate remedy is exclusion. *See, e.g., United States v. Buchbinder*, 796 F.2d 910, 916, n.7 (7th Cir. 1986) (affirming the district court's decision to exclude expert testimony under Rule 12.2(d) because "the defendant failed to give timely notice as required by Rule 12.2(b)," and "much of the defense expert's testimony was, in any event, inadmissible.").

## II. The Court Should Exclude Retired Special Agent Braver from Testifying.

Defendant has represented to the government that he does not intend to call retired IRS-CI Special Agent Ron Braver as a witness. However, in the event that defendant changes course, the Court should preclude such an effort, because there is no conceivable reason Braver's testimony would be relevant at trial.

Even if Braver does not testify regarding Circular 230, the Court should preclude defense counsel from cross-examining defendant's tax preparer regarding the provision. *See* Dkt. 33 at 16-19. Defendant contends that it is "unbelievable"

6

that defendant's tax preparer failed to notice how egregious the deductions were in the 2019 and 2020 returns and questions why defendant should be held accountable for failing to identify mistakes in his returns if his tax preparer failed to identify them. Dkt. 45 at 4. But defendant ignores his provision of the false information in the first place and misunderstands that government's theory of the case. The issue is not (exclusively) defendant's failure to identify the false information on the 2019 and 2020 tax returns, but the provision of false information that led to the preparation of the false returns. As defendant's tax preparer will testify, and as her correspondence with defendant reflects, she relied upon the information provided by defendant in preparing his tax returns. Thus, whether or not defendant's tax preparer should have relied on defendant's false information, or should have conducted additional due diligence to verify the information defendant provided, is irrelevant to defendant's criminal liability for causing the false returns to be filed.

The Court should reject defendant's effort to shift the blame to his tax preparer based on regulations promulgated by the IRS to certified public accountants.

## III. The Government Withdraws its General Objection to the Admission of Text and Emails Between Defendant and Nicholas Dacanay.

Defendant has argued for the general admissibility of emails between himself and his third cousin, Nicholas Dacanay, who assisted defendant in organizing information for his 2019 and 2020 federal and state tax returns. As noted in the government's response to defendant's motions *in limine*, the government plans to call Mr. Dacanay during its case-in-chief and will likely present some of the

communications (texts and emails, mostly) during Mr. Dacanay's direct examination. Accordingly, the government withdraws its general objection to the admissibility of emails between defendant and Mr. Dacanay. Even so, the admissibility of any written communications into evidence will still be subject to the Federal Rules of Evidence. Thus, the government reserves the right to object, where appropriate, to certain of the communications between Mr. Dacanay and defendant on the grounds of relevance (Rule 402), hearsay (Rule 801) and other (i.e., Rule 403) grounds.

## Conclusion

For the reasons set forth above, the government respectfully requests that the Court exclude the testimony of Dr. Steven Farmilant and preclude defendant from introducing evidence or argument regarding IRS Circular 230.

Date: January 5, 2024                    Respectfully submitted,

                                         MORRIS PASQUAL
                                         Acting United States Attorney

                          By:    */s/ Brandon D. Stone*
                                 Brandon D. Stone
                                 Richard M. Rothblatt
                                 Assistant United States Attorneys
                                 219 South Dearborn Street, 5th Floor
                                 Chicago, Illinois 60604
                                 (312) 353-5300