IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 23 CR 323 |
| v. | ) | |
| | ) | Honorable Thomas M. Durkin |
| NIKKO D'AMBROSIO, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S SUPPLEMENTAL FILING REGARDING EXPERT
WITNESS DR. STEVEN FARMILANT

Defendant, NIKKO D'AMBROSIO, by and through his attorneys, RALPH E. MECZYK and CHRISTOPHER T. GROHMAN, respectfully submits the following disclosure. In support, Mr. D'Ambrosio, through counsel, states as follows:

I. Procedural History Related to Expert Farmilant

On or about November 14, 2023 via a phone conversation, Defendant informed the government that it intended to call a forensic psychologist, Dr. Farmilant, to discuss Defendant's mental state. On about December 2, 2023, Dr. Farmilant's name appeared on the defense witness list that was emailed to the government. *See* Exh A. On or about December 8, 2023, counsel had a meeting with the government, during which it outlined the testimony of Dr.

Farmilant. Following that meeting, at the government's request, counsel sent the government an email detailing the relevance of Dr. Farmilant's testimony and attaching a portion of Dr. Farmilant's draft report. This is attached hereto as Exhibit B. In that email, counsel told the government, "Dr. Farmilant ran a variety of cognitive tests on Nikko and found him to be cognitively deficient in several areas, especially math, and his results on several of these tests are indicative of 'significant frontal lobe impairment.' The primary relevance of this evidence would go to our argument that, unlike a normal person, if Nikko was shown these tax returns, he wouldn't immediately recognize that the deductions are not remotely plausible."

On December 19, 2023, when Dr. Farmilant's report was finalized, counsel immediately tendered the report to the government. *See* Exhibit C.[1]

## II. An Outline of Dr. Farmilant's Expected Testimony

Dr. Farmilant will testify about his qualifications as a forensic psychologist, including cases he has previously been qualified as an expert in. These appear in Appendix A to his report.

---

[1] The government argues that Defendant failed to comply with Rule 12.2. However, as discussed, at least as of December 8, 2023, Defendant provided the government with written notice of its intent to call Dr. Farmilant and gave the government an outline of his testimony. Also, Defendant would argue that Dr. Farmilant's testimony is not about a "mental condition" but rather about Defendant's intelligence and ability to grasp numbers, such that Rule 12.2 does not apply.

2

Then, Dr. Farmilant will testify regarding what items he relied upon during his examination. This will include an interview of Defendant's mother and Defendant, as well as reviewing Defendant's medical and educational records, all of which have been tendered to the government. Dr. Farmilant will not introduce the statements made to him by Defendant or his mother specifically but will talk generally about the types of questions he asked them to gain background information about Defendant. Defendant has agreed to this concession to appease the government, who has argued that such statements are hearsay. While these statements may be hearsay, they still could be admitted as part of an expert's testimony. *See* FRE 403 ("An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted. But if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect."); *United States v. Rollins*, 862 F.2d 1282 (7th Cir. 1988) (admitting, as part of the basis of an FBI agent's expert opinion on the meaning of code language, the hearsay statements of an informant). Despite making this concession, should the government cross-examine Dr. Farmilant regarding his interviews, Defendant

3

may attempt to introduce the substance of those interviews on re-direct to bolster Dr. Farmilant's opinion.

Then, Dr. Farmilant will testify regarding the results of the Psychometric testing on Defendant including the Wechsler Adult Intelligence Scale, the Wisconsin Card Sort Test, the Comprehensive Trail Making Test, and the Personality Assessment Inventory, the Inventory of Legal Knowledge. These tests and their results are outlined on pages 9-13 of Dr. Farmilant's report.[2]

At the conclusion of his testimony, Dr. Farmilant will opine that based on the results of his interviews with Defendant and his mother, his review of the relevant records, and the results of the psychometric testing: (1) based on information gathered in this evaluation, it is Dr. Farmilant's opinion to a reasonable degree of certainty as a clinical and forensic psychologist that Mr. D'Ambrosio (1) meets the diagnostic criteria for Mild Neurocognitive Disorder; and, (2) people with such a disorder have trouble processing numbers and, as such, should Defendant have read his tax returns, it would not have been immediately obvious to him that they were completely bogus.[3]

---

[2] The government asks for the "data" behind these tests, but it is unclear exactly what additional information they want. The results of the tests are outlined in the report itself in great detail and additional charts appear in the Appendix.

[3] The government argues that this opinion was not properly disclosed. This is incorrect. This opinion was directly disclosed to the government in counsel's

III. **The Government Is Not Entitled to a *Daubert* Hearing Just Because They Asked for One, and One is Unnecessary to Resolve the Government's Objections**

The Court has set a *Daubert* hearing, apparently granting the government's request for one. However, the government is not entitled to a Daubert hearing simply because they ask nicely. There is no dispute about Dr. Farmilant's qualifications, and he submitted a highly detailed report regarding the testing that he has done. The tests conducted are standard tests used in the disciple. Again, there is no dispute about this. The government's primary argument – that Dr. Farmilant's testimony is either irrelevant or overly prejudicial – can and should be resolved by the Court without a hearing. Dr. Farmilant's testimony at a *Daubert* hearing has no bearing on its relevance at trial. *See United States v. Tingle*, 880 F.3d 850, 854 (7th Cir. 2109 ); *United States v. Johnson*, 916 F.3d 579 (7th Cir. 2019).

January 9, 2024                                        Respectfully submitted,

By: */s/ Christopher T. Grohman*
CHRISTOPHER T. GROHMAN
Benesch Friedlander Coplan and Aronoff
71 S. Wacker Dr. Suite 1600
Chicago, Illinois 60601
Phone: (312) 212-4943

---

December 8, 2023 email 9Exh B.) and stems directly from the conclusions in the report that Defendant has a cognitive disorder.

5

Email: cgrohman@beneschlaw.com

RALPH MECZYK
*Attorneys for Nikko D'Ambrosio*